**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

RONALD NORMAN STATON,

    Plaintiff,

v.                                                                                          No. CV 18-550 CG

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Ronald Norman Staton's *Motion to Reverse and Remand Plaintiff's Claim to the Social Security Administration with Supporting Memorandum* (the "Motion"), (Doc. 22), filed December 20, 2018 and Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 23), filed January 31, 2019. Mr. Staton did not file a Reply and the time for doing so has passed.

Mr. Staton filed an application for disability insurance benefits and supplemental security income on May 23, 2011. (Administrative Record "AR" 173, 183). In both of his applications, Mr. Staton alleged disability beginning January 8, 2011. (AR 173, 183). Mr. Staton claimed he was limited in his ability to work due to arthritis that caused bulging in his back and a herniated disc. (AR 215). Mr. Staton's applications were denied initially on August 19, 2011 and upon reconsideration on July 23, 2012. (AR 102, 106, 119, 122).

Mr. Staton requested a hearing before an Administrative Law Judge ("ALJ"),

1

which was held on February 14, 2013, before ALJ Myriam C. Fernandez Rice. (AR 24). ALJ Rice issued her decision on April 26, 2013, finding Mr. Staton not disabled at any time between his initial filing date through the date of her opinion. (AR 22). Mr. Staton requested review by the Appeals Council, (AR 6), which was denied, (AR 1-4), making ALJ Rice's opinion the Commissioner's final decision for purposes of judicial review.

On January 19, 2015, Mr. Staton filed a complaint in the United States District Court for the District of New Mexico requesting review of ALJ Rice's decision. (AR 676-78). On stipulation from the parties, the Court reversed the Commissioner's decision pursuant to Sentence Four of 42 U.S.C. § 405(g) (2006) and remanded the case for further administrative proceedings. (AR 673). On remand, the ALJ was instructed to give further consideration to the medical opinions of Mr. Staton's treating physicians. (AR 669-70).

On August 4, 2016, Mr. Staton appeared before ALJ Michelle K. Lindsay with attorney Sofia McDermott and non-partial Vocational Expert ("VE") Nicole King. (AR 639). ALJ Lindsay issued her decision December 8, 2016, finding Mr. Staton not disabled at any time between his initial filing date through the date of her decision. (AR 626). Mr. Staton then requested review by the Appeals Council, (AR 634), which was denied, (AR 634-37), making ALJ Lindsay's opinion the Commissioner's final decision for purposes of this appeal.

Mr. Staton, represented by Ms. McDermott, argues in his Motion that ALJ Lindsay erroneously rejected the medical opinions of his treating physicians Albert Colburn, M.D., Atta Rehman, M.D., and Michael Frederich, M.D. (Doc. 22 at 5-6). The Court has reviewed the Motion, the Response, and the relevant law. Additionally, the

Court has meticulously reviewed the administrative record. Because ALJ Lindsay erred in rejecting the medical opinions of Dr. Colburn, Dr. Rehman, and Dr. Frederich, the Court finds that Mr. Staton's Motion should be **GRANTED** and the case be **REMANDED** for further proceedings consistent with this opinion.

   I.   **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one of the "listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.    Background

Mr. Staton claimed he was limited in his ability to work due to arthritis that caused bulging in his back and a herniated disc. (AR 215). At step one, ALJ Lindsay determined that Mr. Staton had not engaged in substantial gainful activity since January 8, 2011, the alleged disability onset date. (AR 618). At step two, ALJ Lindsay found that Mr. Staton has the following severe impairments: degenerative disc disease and joint disease of the lumbar spine; degenerative joint disease of the thoracic spine; thoracic scoliosis; major depressive disorder; and anxiety disorder. *Id.*

At step three, ALJ Lindsay determined that none of Mr. Staton's impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 619). ALJ Lindsay then found that Mr. Staton has the RFC to perform sedentary work with the

---

1.    20 C.F.R. pt. 404, subpt. P, app. 1.

5

following limitations: he can lift, carry, push, and pull ten pounds occasionally; he can sit for six hours in an eight-hour period with five-minute breaks to stand every thirty minutes; he can stand and walk for two hours in an eight-hour period; he can occasionally climb stairs and ramps, stoop, crouch, kneel, and crawl; he can never climb ladders, ropes, or scaffolds; he must avoid more than occasional exposure to extreme cold and vibration; he must completely avoid unprotected heights; he is able to understand, remember and carry out simple instructions, and maintain attention and concentration to perform simple tasks; he can have occasional exposure for two hours at a time without requiring redirection to task; he can have only occasional contact with the general public and only superficial interactions with co-workers and supervisors; he requires work involving no more than occasional changes in the routine work setting and independent goal setting or planning; and the work should not involve travel to unfamiliar places. (AR 620).

In formulating Mr. Staton's RFC, ALJ Lindsay stated that she considered Mr. Staton's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling ("SSR") 96-4p. (AR 621). In addition, ALJ Lindsay stated that she considered opinion evidence consistent with the requirements of 20 C.F.R. §§ 404.1527, 416.927 and SSRs 96-2p, 96-5p, 96-6p, 06-3p. *Id.* ALJ Lindsay concluded that some of Mr. Staton's impairments could be expected to cause his alleged symptoms, but she found that the intensity, persistence, and limiting effects that Mr. Staton described were not entirely consistent with the evidence in the record. *Id.*

Turning to the medical evidence in the record, ALJ Lindsay stated that she gave "little weight" to Mr. Staton's treating physicians, Dr. Rehman, Dr. Colburn, and Dr. Frederich, because "none of their opinions are consistent with their physical examinations or with imaging studies." (AR 624). ALJ Lindsay also considered treatment notes from other medical professionals who examined Mr. Staton, including Alan C. Davis, M.D. and James W. Schutte, Ph.D. *Id.* In addition, ALJ Lindsay considered Mr. Staton's testimony at the hearing, the activities he described in his "disability functional report," and the third-party function report submitted by Mr. Staton's wife. (AR 623-24).

At step four, ALJ Lindsay found that Mr. Staton is unable to perform his past relevant work as an elevator repairer, parts and service manager, delivery driver, welder, aircraft mechanic, home health aide, and construction laborer. (AR 625). ALJ Lindsay then moved to step five, noting that Mr. Staton was 36 years old on the alleged disability onset date, and was therefore classified as a younger individual in accordance with the Regulations. *Id.* At this step, ALJ Lindsay also determined that Mr. Staton has at least a high school education and is able to communicate in English. *Id.*

Further, ALJ Lindsay explained that if Mr. Staton had the RFC to perform the full range of sedentary work, a finding of not disabled would be directed by Medical-Vocational Rule 202.28. *Id.* However, ALJ Lindsay found that Mr. Staton's limitations impeded his ability to perform the full range of sedentary work. *Id.* Therefore, ALJ Lindsay relied on the testimony of the VE to determine applicable jobs Mr. Staton could perform in the national economy. (AR 625-26). ALJ Lindsay noted that the VE testified at the hearing that an individual with Mr. Staton's same age, education, work

7

experience, and RFC could perform the jobs of final assembler and table worker. *Id.* After finding the VE's testimony consistent with the Dictionary of Occupational Titles, ALJ Lindsay adopted the testimony of the VE and concluded that, because Mr. Staton is capable of performing work existing in significant numbers in the national economy, he is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 626).

## IV. Analysis

Mr. Staton presents one argument in his Motion before the Court. (Doc. 22). He argues that ALJ Lindsay's decision to afford "little weight" to the medical opinions of his treating physicians, Dr. Colburn, Dr. Rehman, and Dr. Frederich, was legal error. (Doc. 22 at 1-11). In response, the Commissioner claims that ALJ Lindsay "concisely-expressed reasons for discounting" the treating physicians' opinions, which included her prior discussion of the relevant medical evidence. (Doc. 23 at 9-10). Therefore, the Commissioner reasons ALJ Lindsay's analysis was legally sufficient to withstand judicial scrutiny. *Id.*

Although it is not required that an ALJ discuss every piece of evidence, she is required to discuss, at a minimum, the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Of course, it is not necessary for an ALJ to delineate the direct correspondence between an RFC finding and a specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). However, an ALJ cannot "pick and choose" through a medical opinion, taking only the parts that are favorable to a finding of nondisability. *See id.* at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Ultimately, the ALJ is required to weigh the medical

8

source reports and provide "appropriate explanations" for accepting or rejecting the opinions. SSR 96-5p, 1996 WL 374183, at *5.

To aid in the ALJ's analysis, the Regulations set forth the following factors that should be considered when assessing the value of each medical opinion:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c); *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (the "§ 404.1527 factors"). While not every factor will be applicable in every case, the ALJ must at least explain her decision in a manner that is "sufficiently specific to [be] clear to any subsequent reviewers." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citation omitted); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

In addition, the medical opinion of a treating physician is generally entitled to more weight than other sources, given the physician's treatment relationship with the claimant. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Watkins*, 350 F.3d at 1300. Accordingly, an ALJ must follow a particular, two-step analysis when evaluating and weighing opinions from treating sources. *Watkins*, 350 F.3d at 1300-01. First, the ALJ must decide whether the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the answer to the first inquiry is in the affirmative, the ALJ then determines whether the physician's opinion is "not inconsistent with the other

9

substantial evidence" in the record. *Id.* In cases where both criteria are satisfied, the treating source's opinion is entitled to controlling weight. *Id.*

Even if a treating source's opinion is not entitled to controlling weight, it should still receive deference. SSR 96-2P, 1996 WL 374188, at *4. In deciding how much weight to give the opinion, the ALJ should consider the 20 C.F.R. §§ 404.1527, 416.927 factors. *Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011). The ALJ must "make clear how much weight the [treating source's] opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified . . . for the weight assigned." *Id.* (citing *Watkins*, 350 F.3d at 1300-01); SSR 96-2p, 1996 WL 374188 at *5. Moreover, in rejecting a treating source's opinion, the ALJ "may not make speculative inferences from medical reports" and may not reject the opinion based on her own credibility judgments, speculation, or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

Finally, the Commissioner may not rationalize the ALJ's decision post hoc or attempt to supply possible reasons for the ALJ's decision after the fact. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted). It follows then, that the court may not make a post hoc effort to "salvage [an] ALJ's decision" and judicial review remains limited to the reasons provided in the ALJ's decision. *Robinson*, 366 F.3d at 1084-85; *Carpenter*, 537 F.3d at 1267 (citation omitted). Thus, this Court may only consider the reasoning proffered by the ALJ herself, and not any post hoc rationale provided by the Commissioner. *Robinson*, 366 F.3d at 1084 (citations omitted).

*A. Medical Opinions of Dr. Colburn, Dr. Rehman, and Dr. Frederich*

Mr. Staton argues that ALJ Lindsay failed to adequately explain her rationale for rejecting the physical limitations assessed by Dr. Colburn, Dr. Rehman, and Dr. Frederich in the final RFC assessment. (Doc. 22 at 5-6). Specifically, Mr. Staton contends that ALJ Lindsay should have included the greater restrictions assessed by his treating physicians in the final RFC assessment because their opinions are supported by substantial evidence. (Doc. 22 at 4). The Commissioner responds by first arguing that ALJ Lindsay provided "valid, record-based reasons to discount these opinions." (Doc. 23 at 9). In addition, the Commissioner contends ALJ Lindsay was not required to repeat her analysis of the medical evidence at each section of the opinion and her prior discussions therefore support her conclusion that the treating source opinions should be afforded little weight. (Doc. 23 at 10-11).

On August 31, 2011, Dr. Colburn completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) ("Medical Source Statement"), evaluating Mr. Staton's physical limitations. (AR 615). In the Medical Source Statement, Dr. Colburn opined that Mr. Staton has the following limitations: he can occasionally lift and/or carry twenty pounds; he can frequently lift and/or carry ten pounds; he can stand and/or walk for less than two hours in an eight-hour workday and requires a hand-held device for ambulation; he can sit for less than six hours in an eight-hour workday; he must periodically alternate sitting and standing to relieve pain or discomfort; his upper and lower extremities affect his ability to push and/or pull; he can occasionally climb ramps stairs, ladders, ropes and scaffolds, balance, kneel, and crouch; he can never crawl or stoop; he can occasionally reach in all directions; and he should have limited

exposure to temperature extremes, vibration, hazards, fumes, odors, chemicals, and gases. (AR 609-12).

On February 6, 2013, Dr. Rehman similarly completed a Medical Source Statement assessing Mr. Staton's physical limitations. (AR 589-92). In the Medical Source Statement, Dr. Rehman opined that Mr. Staton has the following limitations: he can occasionally lift and/or carry less than ten pounds; he can stand and/or walk less than two hours in an eight-hour workday; he can sit less than six hours in an eight-hour workday; his ability to push and/or pull is limited in both his upper and lower extremities; he can never climb ramps, stairs, ladders, ropes, or scaffold; he can never balance, kneel, crouch, crawl, and stoop; he can occasionally reach in all directions; and he is limited in his ability to handle temperature extremes, vibration, humidity/wetness, and hazards. *Id.*

On July 14, 2016, Dr. Frederich completed a Medical Source Statement, also opining on Mr. Staton's physical limitations. (AR 945). Dr. Frederich concluded that Mr. Staton had the following limitations: he can occasionally lift and/or carry ten pounds; he can frequently lift and/or carry less than ten pounds; he can stand and/or walk for less than two hours in an eight-hour workday; he can sit for less than six hours in an eight-hour workday; his upper and lower extremities affect his ability to push and/or pull; he can occasionally balance; he can never climb ramps, stairs, ladders, ropes and scaffolds; he can never kneel, crouch, crawl, and stoop; he can occasionally reach in all directions; he can frequently handle, finger, and feel; and he should have limited exposure to cold temperature extremes, hazards, and humidity/wetness. (AR 945-48).

*B. ALJ Lindsay's Consideration of the Treating Physicians' Opinions*

In accordance with Tenth Circuit case law, an ALJ must make a two-step inquiry, each step analytically distinct, when rejecting findings of a treating physician. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must ascertain the weight she will afford the physician's opinion, and thus whether it is entitled to "controlling weight." *Id.* In making this determination, the ALJ may afford a treating physician's opinion lesser weight upon finding that it is not "well-supported by medically acceptable clinical or laboratory diagnostic techniques and is inconsistent with other substantial evidence of record." *Id.*

ALJ Lindsay has satisfied this initial step. First, ALJ Lindsay set forth the weight she assigned the treating physicians' opinions: "little weight." (AR 624). Then, ALJ Lindsay explained that the physicians' opinions were not supported by their own physical examinations or imaging studies. *Id.* In reaching this conclusion, ALJ Lindsay relied on the physicians' treatment notes and the results of prior MRI and X-ray scans. (AR 621-24). This evidence, she concluded, was at odds with Mr. Staton's purported limitations. (AR 624).

Next, at step two, the ALJ must provide "good reasons" to support the assignment of weight she devoted to the physician's opinion. *Krauser*, 638 F.3d at 1330. While the first step requires the ALJ to consider medical evidence to determine what weight the physician's opinion should be assigned, the second step requires the ALJ to then explain why the assigned weight is appropriate. *See, id.* This inquiry requires an ALJ to discuss the § 404.1527 factors and apply the relevant factors in her discussion of the evidence. *Andersen v. Astrue*, 319 Fed.Appx. 712, 722 (10th Cir.

13

2009) (unpublished). While the ALJ does not have to explicitly set forth each § 404.1527 factor, the Court must be satisfied that she has, at the very least, considered them in reaching her conclusion. *Id.*

It is at this step where ALJ Lindsay has erred. Each of the three treating physicians alleged largely consistent limitations regarding Mr. Staton's functional abilities. *See* (AR 589-92); (AR 609-12); (AR 945-48). However, ALJ Lindsay rejected several of the physicians' assigned limitations and did not proffer an opposing opinion. Rather, she parsed through Mr. Staton's medical records and prior treatment notes, opining that the physicians' prescribed limitations do not match their previous diagnoses and findings. (AR 621-24). The Court is not satisfied that ALJ Lindsay's analysis is anything more than her mere speculation, an attempt to craft the imaging studies and physical examinations to satisfy her finding of nondisability.

Indeed, it is troubling how ALJ Lindsay is able to draw a nexus between MRI findings of, for example, "a subtle 2mm disc bulge at L4-L5 levels without evidence of canal stenosis or nerve root impingement," and Mr. Staton's ability to crawl or stoop. *See* (AR 622). Put simply, ALJ Lindsay may not use her lay opinion to discredit the effects of medical findings when that conclusion was not drawn by a medical professional. *See McGoffin v. Barnhart*, 288 F.3d at 1252 ("An ALJ *may not make speculative inferences from medical reports* and may reject a treating physician's opinion outright *only on the basis of contradictory medical evidence* and not due to his or her own credibility judgments, speculation or lay opinion.") (emphasis added); *see also Krauser*, 638 F.3d at 1332 (concluding that the inquiry should proceed "with the treating physician performing her medical role and the ALJ left to [her] role as

14

adjudicator."); *Andersen*, 319 Fed.Appx. at 726 (finding that "mild and moderate modifiers" in prior treatment notes do not necessarily mean that the claimant's "overall condition is mild or moderate" and those modifiers do not "inherently contradict" the physician's assessment).

Compounding ALJ Lindsay's error is the fact that after she afforded Mr. Staton's treating physicians' opinions "little weight," she does not explain how she arrives at the final RFC assessment. (AR 621-24). While relying on seemingly no other physician's opinion, she selects some of the limitations assessed by Mr. Staton's treating physicians but then excludes others without explanation. *Id.* ALJ Lindsay cannot pick and choose which limitations to include in the final RFC assessment without explaining why she found those particular limitations relevant but not the remainder of the physicians' prescribed limitations. *See Haga*, 482 F.3d at 1208 (concluding that the "ALJ should have explained why he rejected four of the moderate restrictions on [the doctor's] RFC assessment while appearing to adopt others.").

Even if the Court construed ALJ Lindsay's speculative inferences as a discussion of the "supportability" of the physicians' findings, one of the six § 404.1527 factors, this reasoning would be insufficient to uphold her decision. *See Andersen*, 319 Fed.Appx. at 726 ("[W]e cannot uphold the ALJ's decision based solely on supportability."). Indeed, it does not appear that ALJ Lindsay considered any other § 404.1527 factor other than supportability, i.e., the length and nature of the treatment relationship, or whether the physician is a specialist. While ALJ Lindsay was not required to explicitly discuss every specific factor in her decision, she was required to demonstrate that she considered all of the relevant factors. *See, id.* At the very least, ALJ Lindsay's reasoning in this regard

15

cannot be deemed "sufficiently specific" for the Court to follow. *See Krauser*, 638 F.3d at 1331 (quoting *Langley*, 373 F.3d at 1119).

In conclusion, ALJ Lindsay does not provide "good reasons" to reject the treating physicians' opinions, as required by law. *Watkins*, 350 F.3d at 1300. While Mr. Staton's RFC determination is an administrative decision that should be completed by ALJ Lindsay, it must be grounded in some medical evidence. *See Hamlin*, 365 F.3d at 1221. ALJ Lindsay's own lay assessment of the conclusions to be drawn from the treating physicians' notes simply does not constitute medical evidence and cannot withstand judicial review. *Id.* It is for these reasons that this case must be remanded.

## V. Conclusion

For the foregoing reasons, the Court finds that the ALJ failed to properly support her decision to reject the medical opinions of Dr. Colburn, Dr. Rehman, and Dr. Frederich.

**IT IS THEREFORE ORDERED** that Mr. Staton's *Motion to Reverse and Remand Plaintiff's Claim to the Social Security Administration with Supporting Memorandum*, (Doc. 22), is **GRANTED** and this case is to be **REMANDED** for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE